222 N.J. Super. 131 (1987)
536 A.2d 287
URBAN LEAGUE OF GREATER NEW BRUNSWICK, ET AL., PLAINTIFFS-APPELLANTS, AND FANNIE BOTTS, LYDIA CRUZ AND JEAN WHITE, PLAINTIFFS,
v.
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF CRANBURY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EAST BRUNSWICK, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MONROE, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NORTH BRUNSWICK, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF OLD BRIDGE, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PISCATAWAY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PLAINSBORO, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF SOUTH BRUNSWICK, AND MAYOR AND COUNCIL OF THE BOROUGH OF SOUTH PLAINFIELD, DEFENDANTS-RESPONDENTS. and MAYOR AND COUNCIL OF THE BOROUGH OF CARTERET, MAYOR AND COUNCIL OF THE BOROUGH OF DUNELLEN, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EDISON, MAYOR AND COUNCIL OF THE BOROUGH OF HELMETTA, MAYOR AND COUNCIL OF THE BOROUGH OF HIGHLAND PARK, MAYOR AND COUNCIL OF THE BOROUGH OF JAMESBURG, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MADISON, MAYOR AND COUNCIL OF THE BOROUGH OF METUCHEN, MAYOR AND COUNCIL OF THE BOROUGH OF MIDDLESEX, MAYOR AND COUNCIL OF THE BOROUGH OF MILLTOWN, MAYOR AND COUNCIL OF THE BOROUGH OF SAYREVILLE, MAYOR AND COUNCIL OF THE CITY OF SOUTH AMBOY, MAYOR AND COUNCIL OF THE BOROUGH OF SOUTH RIVER, MAYOR AND COUNCIL OF THE BOROUGH OF SPOTSWOOD, AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WOODBRIDGE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 2, 1987.
Decided December 29, 1987.
*133 Before Judges J.H. COLEMAN, HAVEY and STERN.
*134 Barbara Stark argued the cause for appellants (Constitutional Litigation Clinic, Rutgers School of Law by John Payne and Barbara Stark, attorneys).
Phillip Lewis Paley argued the cause for respondents (Kirsten, Simon, Friedman, Allen, Cherin and Linken, attorneys; Lionel J. Frank on the brief).
The opinion of the court was delivered by J.H. COLEMAN, P.J.A.D.
The pivotal question raised in this appeal is whether the exclusionary zoning condemned in Mount Laurel I and II may also violate the Federal Fair Housing Act (Act) thereby entitling plaintiffs to an award of attorney fees pursuant to 42 U.S.C. § 3612(c) and therefore R. 4:42-9(a)(8). Based on existing federal decisional law, we answer in the affirmative. The judge below held that the Act was not violated. We now reverse and remand for a redetermination consistent with this opinion.
On July 3, 1974 plaintiffs instituted an action against 23 of 25 municipalities in Middlesex County attacking their zoning ordinances as unconstitutionally exclusionary and discriminatory. The complaint alleged a violation of 42 U.S.C. § 1981 and § 1982 (Civil Rights Act), 42 U.S.C. § 3601 et seq. (Title VIII or the Fair Housing Act); the Thirteenth and Fourteenth Amendments of the United States Constitution; N.J. Const. (1947) Art. I, § 1, 5 and 18 and N.J.S.A. 40:55-32. Plaintiffs also demanded counsel fees and costs in the complaint.
The case was decided on May 4, 1976; the court's decision is reported at 142 N.J. Super. 11 (Ch.Div. 1976). The trial judge found that the zoning ordinances of 11 of the 23 defendant municipalities violated the State Constitution as interpreted and applied in So. Burl. Cty. N.A.A.C.P. v. Tp. of Mt. Laurel, 67 N.J. 151, cert. den. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I). Mount Laurel I found that the zoning ordinances of the respective municipalities violated the *135 police power, equal protection and due process provisions of our State Constitution. Id. at 174-181. The trial judge dismissed plaintiffs' claims of discrimination under Title VIII, the Thirteenth and Fourteenth Amendments and the Civil Rights Act. The dismissal as to the individual plaintiffs was based on a lack of standing. The dismissal respecting the corporate plaintiff was based on a finding that "no credible evidence of deliberate or systematic exclusion of minorities was before the Court." Urb. League New Bruns. v. Mayor & Coun. Carteret, 142 N.J. Super. 11, 19 (Ch.Div. 1976), certif. den., 74 N.J. 262 (1977). Defendants appealed and plaintiffs cross-appealed.
The Appellate Division, in a decision reported at 170 N.J. Super. 461 (1979), reversed in several respects: (1) the decision that Middlesex County was a proper housing region and that some of the defendants' ordinances were exclusionary; Id. at 475, (2) the trial judge's requirement that plaintiffs had to prove discriminatory intent to prevail under Title VIII; Id. at 469, and (3) the ruling that the individual plaintiffs lacked standing to argue violations of Title VIII. Id. at 468. The Appellate Division did not vacate the dismissal of alleged violations of the Thirteenth and Fourteenth Amendments. A remand for a new trial, however, was found to be inappropriate because plaintiffs had failed to sustain the burden of proof that defendants' zoning ordinances violated Mount Laurel I. Id. at 477. Certification was granted, 82 N.J. 283 (1980). The Supreme Court in So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158, 199-200 (1983) (Mount Laurel II) consolidated the present case with five other cases for disposition.[1] The Supreme Court reversed and reinstated the trial judge's holding that the ordinances were exclusionary and violated the police power, due process and equal protection provisions of the State Constitution. Id. at 349. As to the *136 alleged violations of the Thirteenth and Fourteenth Amendments, the Court stated that "it does not appear that [the dismissal of those claims] is being pressed before this Court." Id. at 341.
On July 2, 1985, in response to Mount Laurel I and II, the Legislature enacted the New Jersey Fair Housing Act, N.J.S.A. 52:27D-301 et seq., which created the Council on Affordable Housing (COAH). N.J.S.A. 52:27D-305. On February 20, 1986 the Supreme Court sustained the constitutionality of the Fair Housing Act and ordered pending Mount Laurel II cases transferred to the COAH. Hills Development Co. v. Bernards Township, 103 N.J. 1 (1986).
In August 1986 plaintiffs made applications for attorney fees, expert fees and costs. Plaintiffs argued below that they were successful litigants under Mount Laurel II and that they were entitled to fees pursuant to R. 4:42-9(a)(8) and 42 U.S.C. § 3612(c). As the judge observed:
[T]he plaintiffs ask the court to find that the same facts which our Supreme Court in Mount Laurel II held to be violative of our state constitution under due process and equal protection concepts, that is, the exclusion of poor and low and moderate income people based on zoning practices also amounts to a violation of the federal Fair Housing Act. The federal statute by its terms prohibits discrimination in the sale, rental, financing and brokerage of housing because of race, color, religion, sex or national origin.
Based on the arguments by counsel for the plaintiffs, the issue framed before the judge was whether the economic discrimination established under Mount Laurel II, which conceivably had a disparate impact on racial and ethnic minorities, sufficiently established a violation of the Act which would permit plaintiffs to recover attorney fees and costs under 42 U.S.C. § 3612(c). As the motion judge observed, the thrust of plaintiffs evidence presented in the 1976 trial "attempted to show the impact that excluding [through zoning] has on minorities."
Although the motion judge was extremely sympathetic toward plaintiffs, he nonetheless concluded that they should not prevail. He stated:

*137 I have to express in advance my personal frustration with the result I'm going to reach. There is something wrong about the result I'm going to reach in terms of equity, but I don't think that I have that kind of latitude to do what I just inherently feel is right in this case and, that is, that the Urban League should prevail. By a course of history and procedural fate the Urban League never got a chance to prove its case, and it can't prove it, now. It can't prove it factually, now, looking backward. If it could do that, then the Bung's case might give us some basis for granting relief. Perhaps an Appellate Court could find some way out of that morass, but I can't. And I say that up front, because it is a disturbing case to me. It's disturbing, it was disturbing up to after I had reviewed the law and assessed where I was at to make me hesitate for a long period of time to reach the decision that I feel that I am absolutely compelled to reach based on the law that's before me.
The trial court denied the application for attorneys fees and expenses after concluding that plaintiffs had not been successful litigants on any federal constitutional or statutory claims alleged in the complaint. The judge stated:
The Singer test [Singer v. State, 95 N.J. 487 (1984)] does require a federal nexus between the cause of action and the relief obtained. I do not  I think I said "federal nexus." I mean a factual nexus. The factual nexus is not present in this case. A violation of the federal Fair Housing Act would not require, I'm sorry, a violation of the federal Fair Housing Act would require a finding of discrimination based on race, color, sex, religion or creed, not low or moderate income. The Supreme Court finding [in Mount Laurel II] was confined to the impact defendants' improper use of its power to zone was having on persons of lower and moderate income. While it may be that the impact was most greatly felt by nonwhites, minorities, no court has found low or moderate income to be equivalent to race. See Waldie versus Schlesinger, 509 Fed.2d 1110, [sic, 508] Second Circuit, 1975, relying on James v. Valtierra, V-a-l-i-e-r-r-a, [sic] Second Circuit  I'm sorry, 402 U.S. 137 [91 S.Ct. 1331, 28 L.Ed.2d 678], 1971.

While the plaintiff attempts to prove disparate impact defendant's actions had on minorities, as I've indicated, such evidence should not be considered at this stage and certainly was not relied upon by the Supreme Court. Additionally, it is often the case, that is, that a state court will rely on its own constitution to provide its citizens with even greater protection than is available under the federal constitution. That is clearly the fact in this case. There in all likelihood cannot be a federal Mount Laurel, say violation of our state constitution, which may provide greater protection which in certain areas does not necessarily result in a violation of the federal constitution. In the instant case I cannot say that the same facts which give rise to the New Jersey violation also violate the federal Act. [emphasis added]
Plaintiffs have appealed from the order dated February 13, 1987 which denied the application for attorney fees and cost. In this appeal, plaintiffs contend:

*138 1. PREVAILING PLAINTIFFS IN CIVIL RIGHTS CASES ARE PRESUMPTIVELY ENTITLED TO ATTORNEYS' FEES.
A. A PREVAILING PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES UNLESS "SPECIAL CIRCUMSTANCES" RENDER SUCH AN AWARD UNJUST.
B. THE PIGGIE PARK STANDARD IS APPLICABLE TO TITLE VIII CASES.
2. THE TRIAL COURT'S HOLDING THAT IT LACKED AUTHORITY TO AWARD PLAINTIFFS' FEES WAS WRONG AS A MATTER OF LAW.
3. PLAINTIFFS ASSERTING A FEDERAL FEE CLAIM AND A STATE NONFEE CLAIM IN THE SAME ACTION, WHO PREVAIL ON THE NONFEE STATE CLAIM, ARE ENTITLED TO FEES WHERE THE FEDERAL CLAIM IS SUBSTANTIAL AND BOTH CLAIMS ARISE OUT OF THE SAME NUCLEUS OF OPERATIVE FACTS.
A. PLAINTIFFS' TITLE VIII CLAIM AROSE FROM THE SAME "NUCLEUS OF OPERATIVE FACTS" AS THE STATE CLAIM ON WHICH PLAINTIFFS PREVAILED.
B. PLAINTIFFS' TITLE VIII CLAIM MEETS THE SUBSTANTIALITY TEST.
4. THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING THE PREVAILING PARTY COSTS, INCLUDING EXPERTS' FEES.
A. THE TRIAL COURT ERRED IN HOLDING THAT IT LACKED DISCRETION TO AWARD PLAINTIFFS' EXPERTS FEES.
C. REASONABLE AND NECESSARY COSTS INCLUDED THE URBAN LEAGUE'S SHARE OF THE COURT-APPOINTED EXPERT'S FEE AND THE COURT BELOW ABUSED ITS DISCRETION IN DENYING REIMBURSEMENT FOR SUCH FEE.
Boiled down, plaintiffs argue that when a fee claim is appended to a nonfee claim and there is a recovery on the nonfee claim but no disposition is made of the fee claim, a court should follow the "same nucleus of operative facts" doctrine and decide whether to allow attorney fees and costs pursuant to § 3612(c). Plaintiffs argue that a court should simply look at the complaint that was filed in 1974 to see if plaintiffs alleged fee (federal constitutional or statutory violations) as well as nonfee (state constitutional or statutory) violations. If both were alleged and plaintiffs became a "prevailing party" within the meaning of § 3612(c), then attorney fees and cost should be awarded pursuant to R. 4:42-9(a)(8).
Plaintiffs have mistakenly relied on a series of federal cases, tailored to establish standards for the federal courts to decide *139 the threshold question of when the federal courts have pendent jurisdiction under 28 U.S.C. § 1343 to hear a state nonfee claim that is pendent to a federal fee claim. Maher v. Gagne, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) and United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) are examples. Obviously, there is no issue of jurisdiction in the present case which originated in the state courts seeking redress under state and federal constitutional and statutory laws. The federal statutes involved vested concurrent jurisdiction in the federal and state courts.
Lavine dealt with jurisdiction of federal courts to hear state law claims appended to federal law claims where jurisdiction is based on 28 U.S.C. § 1343 which requires no jurisdictional amount. In Lavine the Court found that the Fourteenth Amendment equal protection claim presented by plaintiff was sufficiently substantial to allow the District Court to exercise pendent jurisdiction over a claim alleging conflict between state and federal welfare regulations. A claim is regarded as substantial when it is not frivolous. Under pendent jurisdiction, the "state and federal claims must derive from a common nucleus of operative facts." United Mine Workers v. Gibbs, supra 383 U.S. at 725, 86 S.Ct. at 1138, 16 L.Ed.2d at 228. The substantiality doctrine must be determined from the allegations contained in the complaint. Hagans v. Lavine, supra, 415 U.S. at 537-39, 94 S.Ct. at 1379-1381, 39 L.Ed.2d at 588. It would make little sense to require a trial before deciding whether the court has or should exercise jurisdiction. If allegations are made in the complaint that a substantial right has been violated, then the federal court may take jurisdiction and hear the entire case.
We reject plaintiffs' argument that a court should be required to examine only the complaint to see if a substantial federal fee claim has been established based on the "same nucleus of operative facts" which established the nonfee claim. Acceptance of plaintiffs' suggestion where, as here, a defendant *140 has denied the allegations, would mean that a substantial request for relief made in the complaint (a request for counsel fees based on alleged violation of a federal statute) would be determined from mere allegations rather than from evidence presented. In the present case, the complaint was not even verified. It is well known that under our State rules of practice, a complaint is not required to outline evidence which may be used to establish the allegations in the complaint. Under our practice a complaint contains nontechnical allegations, see R. 4:5-2 and 7, except where more specific allegations are required in cases such as fraud or defamation. See R. 4:5-8.
This case is unique because the individual plaintiffs were improperly precluded by the trial judge in 1976 from presenting evidence calculated to establish racial and ethnic discrimination in violation of the asserted federal claims. Also, the trial judge applied an erroneous standard when he concluded that the corporate plaintiff failed to prove deliberate or systematic exclusion of minorities. We reversed those findings in 1979. See 170 N.J. Super. 469. The Supreme Court did not address in Mount Laurel II any of the federal claims alleged in the complaint. Plaintiffs candidly admit that once they became successful on the state claim, they had no real interest to seek to prove federal violations simply to shore up their position for counsel fees. Plaintiffs also admit that the record presented in 1976 does not contain evidence of discriminatory intent. In view of the unique procedural history involved, a determination must now be made whether the 1976 trial record sufficiently established discriminatory impact, all that is required to establish a violation of § 3604(a) of Title VIII so as to permit a judge, in the exercise of discretion, to award plaintiffs attorney fees pursuant to § 3612(c).
In the present case a demand for counsel fees, like a demand for monetary damages in general, can only be awarded if an entitlement is established through competent evidence. Here, plaintiffs must establish through the same evidence presented *141 during the 1976 trial that they are entitled to counsel fees because that evidence established a prima facie violation of Title VIII. Where the fee claim has not been adjudicated and there is no question raised pertaining to jurisdiction, the "same nucleus of operative facts" doctrine means the fee claim must have been established in the process of proving the nonfee claim, but the Court simply elected not to base its decision on the fee claim. As noted previously the individual plaintiffs never tried their Title VIII claim because it was dismissed by the trial judge. Following our reversal, the Supreme Court granted certification and plaintiffs won without ever trying the Title VIII claim. At the time of oral argument before us counsel for plaintiffs indicated that they do not now want an evidentiary trial on the Title VIII claim. We regard this as a waiver of an evidentiary trial. In view of that request, and in any event it would be senseless to add to the cost of the case associated with an evidentiary hearing merely to determine the counsel fee claim, the issue can be decided only on the basis of a de novo trial based on the 1976 record. See R. 3:23-8.
The cases cited by plaintiffs for the proposition that attorneys fees may be allowed without a trial on the Title VIII claim are distinguishable from the present case. In those cases the plaintiff prevailed in a settlement or based on a determination made from the evidence presented that either a federal statute or the federal Constitution had been violated. See Maher and Hagans, supra, (involving violations of the Social Security Act, 42 U.S.C. § 602(a)(7) and the Fourteenth Amendment); Singer v. State, 95 N.J. 487 (1984), cert. den., 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984) (involving violations of the First and Fourteenth Amendments); Bung's Bar & Grille, Inc. v. Florence Tp., 206 N.J. Super. 432, 466 (Law Div. 1985) (involving a Fourteenth Amendment violation); Carlstadt Educ. v. Mayor & Council, 219 N.J. Super. 164, 167 (App.Div. 1987) (involving a First Amendment violation) and Frank's Chicken House v. Mayor and Council, 208 N.J. Super. 542, 544 (App.Div. 1986) (involving a First Amendment violation). Except for Bungs, *142 these cases simply do not support plaintiffs because plaintiffs did not prevail in Mount Laurel II on any fee claim (a violation of the federal constitutional or statutory laws). In Bungs, the court, subsequent to the trial in which plaintiff prevailed on a nonfee State claim, applied the "common nucleus of operative facts" doctrine and concluded that the same evidence established that the assessment against the lands owned by plaintiffs for local improvement, which exceeded the actual cost of the improvement, violated the Fourteenth Amendment and awarded fees under § 1988. Bungs, supra, 206 N.J. Super. at 465-466.
R. 4:42-9(a)(8) authorizes an allowance for attorney fees "in all cases where counsel fees are permitted by statute." 42 U.S.C. § 3612(c) of the the federal Fair Housing Act, permits a counsel fee allowance to a litigant who establishes a violation of Title VIII.
§ 3612(c) provides:
(c) The court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: Provided, That the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.
Even though we are satisfied that plaintiffs were successful litigants in Mount Laurel II, (discussed infra) the Supreme Court's decision was anchored in neither the federal constitution nor federal statutes (fee claims). Instead, plaintiffs prevailed under state constitutional nonfee claims.
Despite defendants contention to the contrary, plaintiffs were prevailing parties under Mount Laurel II and § 3612(c) if the exclusionary zoning also violated Title VIII. Singer held that a litigant becomes a "prevailing party" for purposes of § 1988 counsel fees if the plaintiff has "won substantially the relief originally sought in her [or his] complaint." Singer v. State, supra, 95 N.J. at 495; quoting Maher v. Gagne, supra, 448 U.S. at 127, 100 S.Ct. at 2576, 65 L.Ed.2d at 658 (1980). Plaintiffs filed the complaint herein to invalidate exclusionary *143 zoning in Middlesex County and to make possible the construction of housing that was affordable by low and moderate income people. That relief and more, was granted. Because the fee claim has not been adjudicated, plaintiffs may be regarded as "prevailing parties" within the meaning of § 3612(c) if the record developed in 1976 established a prima facie violation of § 3604(a) which was not rebutted.
As we observed previously, the judge concluded that "looking backward" plaintiffs had not proven a violation of the Act. Based on our study of the judge's oral decision, we are uncertain as to what he meant by "looking backward." It is not clear to us from the record whether he had the transcripts of evidence and exhibits presented during the trial in 1976. We must assume he did not because those records have not been submitted to us in this appeal. The judge below concluded that proof of discrimination against persons with low and moderate incomes was not proof of the discriminatory intent required by Title VIII. While it is by no means clear what legal standard was applied by the judge, it would appear that he applied the standard required for determining whether the Fourteenth Amendment equal protection clause had been violated. See Arlington Heights v. Metro. Housing Corp., 429 U.S. 252, 264-268, 97 S.Ct. 555, 563-567, 50 L.Ed.2d 450, 463-467 (1977); Washington v. Davis, 426 U.S. 229, 238-242, 96 S.Ct. 2040, 2047-2051, 48 L.Ed.2d 597, 606-608 (1976). These cases held that a showing of discriminatory intent is a prerequisite to establishing a violation of the Fourteenth Amendment equal protection clause.
The constitutional standard is the wrong standard for determining whether Title VIII has been violated and we made that clear in our earlier decision in this matter. See 170 N.J. Super. at 469-70. There, we directed that when determining whether the Act has been violated, a less stringent standard than required by Arlington Heights and Washington v. Davis, supra, is applicable. We directed that the standard articulated in Metropolitan, etc. v. Village of Arlington Heights [Arlington *144 Heights II], 558 F.2d 1283 (7th Cir.1977), cert. den. 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978), be applied.
In Arlington Heights I the plaintiffs requested the defendant municipality to rezone a tract of land from single family to multiple family to permit the construction of low cost townhouses. When the defendant refused plaintiff sued in the Federal Court claiming violations of the Fourteenth Amendment Equal Protection Clause, § 1981-3 and Title VIII, § 3604(a) and § 3617. § 3604(a) provides, in pertinent part, that "it shall be unlawful (a) to ... make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin." § 3617 provides that "[i]t shall be unlawful to ... interfere with any person in the exercise or enjoyment of ... any right granted or protected by section 3603, 3604, 3605, or 3606 of this title...."
After the trial in Arlington Heights I, the District Court held that plaintiffs had failed to prove that the refusal to rezone would affect members of racial minorities, as opposed to poor people in general, adversely. 373 F. Supp. 208, 211 (N.D.Ill. 1974). The court also found the absence of any proof of discriminatory intent. The District Court found no violation of equal protection and therefore did not decide whether Title VIII had been violated. The Seventh Circuit reversed the finding of no violation of equal protection. The Supreme Court reversed the Seventh Circuit, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), and remanded to the Circuit Court for a determination of whether Title VIII had been violated by the failure to rezone.
On the remand the Seventh Circuit had to decide whether zoning which had a discriminatory effect could constitute a violation of Title VIII. In Arlington Heights II, the court observed:
The basic question we must answer is whether the Village's action violated sections 3604(a) or 3617 because it had discriminatory effects when that action was taken without discriminatory intent. Since the violation of section 3617 alleged in this case depends upon a finding that the Village interfered with rights granted or protected by section 3604(a), [footnote omitted] we can *145 confine our inquiry to whether the refusal to rezone made unavailable or denied a dwelling to any person because of race within the meaning of section 3604(a). In resolving this issue we must address ourselves to two preliminary subissues: first, whether a finding that an action has a discriminatory effect, without a concomitant finding that the action was taken with discriminatory intent, is ever enough to support the conclusion that the action violated section 3604(a); and, if so, under what factual circumstances will it be enough?
The major obstacle to concluding that action taken without discriminatory intent can violate section 3604(a) is the phrase "because of race" contained in the statutory provision. The narrow view of the phrase is that a party cannot commit an act "because of race" unless he intends to discriminate between races. By hypothesis, this approach would excuse the Village from liability because it acted without discriminatory intent. The broad view is that a party commit an act "because of race" whenever the natural and foreseeable consequence of that act is to discriminate between races, regardless of his intent. Under this statistical, effect-oriented view of causality, the Village could be liable since the natural and foreseeable consequence of its failure to rezone was to adversely affect black people seeking low-cost housing and to perpetuate segregation in Arlington Heights.
* * * * * * * *
In light of the declaration of congressional intent provided by section 3601 and the need to construe the Act expansively in order to implement the goal, we decline to take a narrow view of the phrase "because of race" contained in section 3604(a). Conduct that has the necessary and foreseeable consequence of perpetuating segregation can be as deleterious as purposefully discriminatory conduct in frustrating the national commitment "to replace the ghettos `by truly integrated and balanced living patterns.'" Trafficante [v. Metropolitan Life Ins. Co.], 409 U.S. [205] at 211, 93 S.Ct. [364] at 368 [34 L.Ed.2d 415 (1972)], citing 114 Cong.Rec. 3422 (remarks of Sen. Mondale). Moreover, a requirement that the plaintiff prove discriminatory intent before relief can be granted under the statute is often a burden that is impossible to satisfy. "[I]ntent, motive and purpose are elusive subjective concepts," Hawkins v. Town of Shaw, 461 F.2d 1171, 1172 (5th Cir.1972) (en banc) (per curiam), and attempts to discern the intent of an entity such as a municipality are at best problematic. See Hart v. Community School Board of Education, 512 F.2d 37, 50 (2d Cir.1975); Note, Reading the Mind of the School Board: Segregative Intent and the DeFacto/DeJure Distinction, 86 Yale L.J. 317, 322-26 (1976).
* * * * * * * *
We therefore hold that at least under some circumstances a violation of section 3604(a) can be established by a showing of discriminatory effect without a showing of discriminatory intent. A number of courts have agreed. Smith v. Anchor Bldg. Corp., 536 F.2d 231 (8th Cir.1976); United States v. City of Black Jack, 508 F.2d 1179, 1183 (8th Cir.1974), cert denied, 422 U.S. 1042, 95 S.Ct. 2656, 42 L.Ed.2d 694 (1975); Kennedy Park Homes Assoc., Inc. v. City of Lackawanna, 436 F.2d 108, 114 (2d Cir. 1970) (dictum), cert. denied, 401 U.S. *146 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971); Resident Advisory Board v. Rizzo, 425 F. Supp. 987, 1021-24 (E.D.Pa. 1976).
[558 F.2d, supra, at 1288-1290]
Arlington Heights II also created a four-pronged test to help determine whether Title VIII has been violated, namely:
(1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of Washington v. Davis; (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing."
Id. at 1290.
The Seventh Circuit declined to adopt a per se rule that once a racially discriminatory effect is shown, violations of § 3604(a) and § 3617 have been established. It did however, acknowledge that zoning which appears to be racially neutral may nonetheless violate Title VIII if that zoning perpetuates segregation and thereby prevents interracial housing notwithstanding the extent to which the zoning produces a disparate effect on different racial or ethnic groups. Id. at 1290. The fact that the zoning may adversely affect white as well as nonwhite (those unprotected and those protected by Title VIII) is not an obstacle to relief under Title VIII. Id. at 1291. Obviously, if Title VIII can be violated without a showing of disparate effect on a protected group, it follows that a violation may also occur when a disparate effect is shown on a protected group. Id. at 1290. Thus, Arlington Heights II held that municipal zoning may violate § 3604(a) and § 3617 of Title VIII because the municipality is a "party" under the Act and "a party commits an act `because of race' whenever the natural and foreseeable consequence of that act is to discriminate between races, regardless of his [the party's] intent." Id. at 1288.
United States v. City of Black Jack, Missouri, 508 F.2d 1179, 1184-85 (8th Cir.1974), cert. den. 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975), reh. den. 423 U.S. 884, 96 S.Ct. 158, 46 L.Ed.2d 115 (1975) is another case involving a violation of *147 Title VIII through zoning which adversely affected protected and nonprotected groups. The facts there are somewhat similar to those in the present case. There, the United States brought an action against the City under Title VIII. The complaint alleged that the City had violated § 3604(a) by adopting a zoning ordinance which prohibited the construction of any new multiple family dwellings such as low to moderate income integrated townhouse developments which in effect denied persons housing on the basis of race. The Court held that a municipality was a "person" and thus could be sued under Title VIII. Id. at 1183-84.
The Court was also instructive as to how to prove discriminatory effect. It stated:
The burden of proof in Title VIII cases is governed by the concept of the "prima facie case." Williams v. Matthews Co., supra 499 F.2d [819] at 826 [(8th Cir.1974)]. To establish a prima facie case of racial discrimination, the plaintiff need prove no more than that the conduct of the defendant actually or predictably results in racial discrimination; in other words, that it has a discriminatory effect. See id; United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, 493 F.2d 799, 808 (5th Cir.1974); Hawkins v. Town of Shaw, Mississippi, 461 F.2d 1171 (5th Cir.1972) (en banc); Kennedy Park Homes Ass'n v. City of Lackawanna, supra 436 F.2d at 114; Dailey v. City of Lawton, Oklahoma, 425 F.2d 1037, 1039 (10th Cir. 1970); Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 931 (2nd Cir.1968). The plaintiff need make no showing whatsoever that the action resulting in racial discrimination in housing [footnote omitted] was racially motivated. [footnote omitted] See Williams v. Matthews Co., supra 499 F.2d at 826; United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, supra 493 F.2d [799] at 808 [(5th Cir.1974)]; Kennedy Park Homes Ass'n v. City of Lackawanna, supra 436 F.2d at 114; Citizens Committee for Faraday Wood v. Lindsay, supra 362 F. Supp. [651] at 658 [(S.D.N.Y. 1973)]; Banks v. Perk, supra 341 F. Supp. [1175] at 1180 [(N.D.Ohio 1972)]. Effect, and not motivation, is the touchstone, in part because clever men may easily conceal their motivations, but more importantly, because
... [w]hatever our law was once, ... we now firmly recognize that the arbitrary quality of thoughtlessness can be as disastrous and unfair to private rights and the public interest as the perversity of a willful scheme.

Hobson v. Hansen, 269 F. Supp. 401, 497 (D.D.C. 1967), aff'd sub nom. Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175 (1969) (en banc).
Id. at 1184-85.
To summarize, Arlington Heights II, City of Black Jack, Missouri, and Kennedy Park Homes Assoc., Inc. v. City of *148 Lackawanna, 436 F.2d 108 (2nd Cir.1970), cert. den. 401 U.S. 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971) all held that local zoning ordinances which prevent the construction of low-income housing may violate the federal Fair Housing Act even though persons who were not protected by the Act were also affected adversely. For other cases to the same effect, see Smith v. Town of Clarkton, N.C., 682 F.2d 1055, 1064-66 (4th Cir.1982); United States v. City of of Parma, Ohio, 661 F.2d 562 (6th Cir.1981), reh. den., 669 F.2d 1100 (6th Cir.1981), cert. den. 456 U.S. 926, 102 S.Ct. 1972, 72 L.Ed.2d 441 (1982), reh. den. 456 U.S. 1012, 102 S.Ct. 2308, 73 L.Ed.2d 1309 (1982); United States v. Yonkers Bd. of Education, 624 F. Supp. 1276, 1293 (S.D.N.Y. 1985).
We recognize that some of the municipalities involved may have enacted their zoning ordinances based on legitimately derived authority before Title VIII became effective on April 12, 1968. Nonetheless, if the effect of the zoning ordinance is to perpetuate segregation in housing and that ordinance was not changed to comply with the objective of the Federal Fair Housing Act  "to provide, within constitutional limitations, for fair housing throughout the United States" § 3601  the actual or threatened enforcement of such ordinances after April 12, 1968 exposes that municipality to a possible violation of the Act. See § 3615. In Singer v. State, supra, 95 N.J. at 493, our Supreme Court recognized that it was the power to enforce a law, and the possibility of future enforcement, that created liability under § 1983 and for counsel fees under § 1988. We perceive no valid reason why the same rationale should not apply to a determination of whether Title VIII may have been violated.
The Supreme Court in Mount Laurel II noted that the most significant evidence plaintiffs produced to prove that the zoning ordinances of the municipalities in Middlesex County failed to provide realistic opportunities for low and moderate income housing concerned the relationship between jobs, housing and zoning practices. Based on statistics, the plaintiffs showed *149 that between 1954 and 1972 Middlesex County as a whole gained over 45,000 retail, wholesale and manufacturing jobs.
At the same time, according to the plaintiffs' proofs, between 1960 and 1970 the total amount of land in the county zoned for multi-family housing decreased from 2,000 acres to 307 acres (an 84 percent decline), and the amount of land zoned for less than quarter acre single family lots decreased from 20,000 acres to 2,783 acres (an 86 percent decline), while at the same time industrial zoning went from 24.9 percent of total vacant land to 41.7 percent of total vacant land. Plaintiffs concluded that these exclusionary practices were largely responsible for the fact that between 1960 and 1970 only one new unit of housing was built for every 2.2 new jobs created in the community.
Some further indication of the shortage of housing is found in the fact that the number of employees working in but living out of the county increased by 291 percent between 1960 and 1970; that 55,000 people who were employed in the county lived outside of it.
[Mount Laurel II, supra, 92 N.J. at 343, n. 75]
Plaintiffs contend that they never abandoned their federal claims, particularly the Fair Housing Act claim, at any time throughout the years of this litigation. They urge that support for this argument is found in two important areas. First, the nondiscriminatory affirmative marketing clauses contained in all Final Orders and Judgments of Repose entered into by plaintiffs show the courts' concern with the Federal Fair Housing Act claim. Indeed, the significance of race was a concern to the Court in Mount Laurel II. It referred to suburban exclusion as one of the principle causes making America "two societies, one black, one white  separate and unequal." Mount Laurel II, supra, 92 N.J. at 210, n. 5. Similarly, the trial judge recognized the need for integrated housing when he stated "[t]he impact of low-density zoning is most adverse to blacks and Hispanics, who are disproportionately of low and moderate income." 142 N.J. Super. at 19.
Second, a sixty-two page supplement to plaintiffs' memorandum in support of the application for attorney's fees contains 1980 census data. That data reveals isolated areas where the black population is concentrated. Plaintiffs contend that this data established a prima facie case of racial discrimination under Title VIII. But this data came from the 1980 census and *150 is therefore unlikely to have been presented at the 1976 trial. Absent further clarification we fail to see how this material could have been presented during the 1976 trial.
Under federal decisional law, if a prima facie case of racial or ethnic discriminatory effect was established by the evidence presented in the 1976 trial, "the burden shifts to the governmental defendant to demonstrate [from the evidence] that its conduct [in passing or enforcing its zoning ordinance] was necessary to promote a compelling governmental interest." City of Black Jack, Missouri, supra, 508 F.2d at 1185. Here, it may be more difficult for the defendants to now rebut a prima facie case, when and if plaintiffs establish one, because Mount Laurel II has already decided that the ordinances advance no compelling governmental interest.
We are persuaded that the judge failed to examine the 1976 record in the light of the controlling legal principles explicated in this decision. In reaching his decision the judge observed:
It is by no means clear that the Thirteenth and Fourteenth Amendment claims or the Section 36:12 [sic] claims would have been proven and, if so, what the result would have been. That issue cannot, now, be proven by affidavit, and a full trial on the issue is hardly fair or appropriate and in all likelihood would be barred under the single controversy doctrine in any event.
* * * * * * * *
In the case before me I cannot say that the Supreme Court could have easily chosen another path or that it would, that it made an unnecessary judicial election. That involves an appropriate specialization and extrapolation on my part. One could just as easily argue that the Supreme Court purposely chose its path, because the election under 36:12 [sic] would not have protected as broad a class of persons as did the opinion of the court and it would not have given the court the broad sweeping powers, which then set upon the trial courts to deal with discretionary zoning. It would have limited the court to the relief provided under the Federal Housing Act, which essentially injunctive and damages, so it's by no means clear. In fact, one could make very strong argument that it is alternatively clear to the contrary, that the court knew exactly where it wanted to go with its choice of legal theory. However, both statements are speculative at best.
* * * * * * * *
The principal thrust of the federal Act at Section 36:01 [sic], et seq. is to prohibit discriminatory housing practices. That term is defined as an unlawful *151 act within the meaning of Section 36:04 [sic], 36:05 [sic] and 36:06 [sic]. 36:04 [sic] is addressed to discrimination of the sale or rental of housing, and it creates a violation if there is a refusal to sell or rent after a bona fide offer because of race, color, religion, sex, national origin. If there is a discrimination in services or facilities connected with those factors, if there is a publication indicating preference based on those factors, if there is a representation that property is not available for inspection, sale or rental because of those factors, or if there is what is known as blockbusting because of those factors. Section 36:05 [sic] protects against unlawful practices by financial institutions because of race, color, religion, sex or national origin, and 36:06 [sic] creates a violation if any person is denied access or membership or participation in any multiple listing service and so forth again because of those practices.
It's for a violation of these three sections and these three sections alone and of their specific terms at Section 36:12 [sic] provides the right of a private person to injunctive relief, actual damages, punitive damages up to a thousand dollars, court costs and reasonable attorney's fees to a prevailing plaintiff if the plaintiff is not financially able to assume the fees. Mount Laurel II approaches a broad housing problem from a very different direction. The problem is related to the extent that both Mount Laurel II and the federal Fair Housing Act deal with fair housing. Certainly there is an overlap to the extent that the exclusion of the poor could and in all likelihood does mean the exclusion of certain races, people of certain national origins. But Mount Laurel does not ground its constitutional violation on discrimination of race, color, sex, or national origin. Its thrust is totally different, and its relief is unlike anything that the federal Act envisioned.
We agree with the judge that Mount Laurel II advanced the cause of fair housing beyond what Congress contemplated in Title VIII. But that does not mean that the 1976 trial evidence may not also establish a prima facie violation of Title VIII. The federal Fair Housing Act was intended to establish the floor below which no individual state or federal agency could go in providing housing. That did not mean, however, that the states were not free to provide its citizens with broader protection in the area of housing. That is exactly what happened in this case. In the process of electing to provide greater protection in housing, the Title VIII issue was not decided. In Right to Choose v. Byrne, 91 N.J. 287, 316 (1982) and Singer v. State, supra, 95 N.J. at 500, our Supreme Court held that an award of counsel fees under § 1988 may be allowed under R. 4:42-9 to a plaintiff who prevailed on a State claim but whose federal fee claim was not decided if the two claims were related *152 by either a common core of facts or related legal theories.[2] We believe the same approach should be applied to an alleged violation of § 3604 and a request for fees under § 3612(c).
We hold plaintiffs are entitled to now have a decision on the unresolved fee claim under Title VIII based on the "common nucleus of operative facts" doctrine which in this case means a de novo trial based on the 1976 trial record. With leave of court, the parties should be permitted to submit expert reports based on the 1976 record and matters which may be judicially noticed pursuant to Evid.R. 9 but an evidentiary hearing is not to be allowed. We are mindful of the possibility that before plaintiffs receive a check from defendants for counsel fees, plaintiffs may face even more appeals than were involved in obtaining the remedy afforded in Mount Laurel II. We are also mindful of the cost to government and plaintiffs in proceedings related to collection of the fees. We therefore emphasize that we are not authorizing or permitting more expensive evidentiary trial proceedings. Nor are we creating any new remedy or right to relief. We are directing only a review of the record already created to ascertain if that record sufficiently establishes a violation of Title VIII which would permit an award of counsel fees under § 3612(c) and, therefore, under R. 4:42-9.
Finally, we observe that on the remand should the judge conclude that the 1976 record established a prima facie violation of Title VIII and that defendants failed to rebut the prima facie showing, the judge, nevertheless, is not mandated to allow counsel fees and costs. The granting of counsel fees and costs under § 3612 and our R. 4:42-9 is discretionary. Also, the court must first satisfy itself that plaintiffs were *153 otherwise unable to finance the litigation. See Annot., 43 A.L.R.Fed. 243, §§ 2, 5(c), 13.
Reversed and remanded to the Chancery Division for a redetermination in accordance with this decision. We do not retain jurisdiction.
NOTES
[1] Only seven of the defendants participated in Mount Laurel II: Cranbury, East Brunswick, Monroe, Piscataway, Plainsboro, South Brunswick and South Plainfield. 92 N.J. at 341.
[2] We do not read Right to Choose v. Byrne, 91 N.J. 287, 317 (1982), to require that Mount Laurel II decision must have been based on a violation of Title VIII before plaintiffs could be a "prevailing party" under § 3612(c).