170 N.J. Super. 461 (1979)
406 A.2d 1322
URBAN LEAGUE OF GREATER NEW BRUNSWICK, A NONPROFIT CORPORATION OF THE STATE OF NEW JERSEY, CLEVELAND BENSON, FANNIE BOTTS, JUDITH CHAMPION, LYDIA CRUZ, BARBARA TIPPETT, KENNETH TUSKEY AND JEAN WHITE, ON THEIR OWN BEHALF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
THE MAYOR AND COUNCIL OF THE BOROUGH OF CARTERET, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF CRANBURY, MAYOR AND COUNCIL OF THE BOROUGH OF DUNELLEN, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EAST BRUNSWICK, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EDISON, MAYOR AND COUNCIL OF THE BOROUGH OF HELMETTA, MAYOR AND COUNCIL OF THE BOROUGH OF HIGHLAND PARK, MAYOR AND COUNCIL OF THE BOROUGH OF JAMESBURG, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MADISON, MAYOR AND COUNCIL OF THE BOROUGH OF METUCHEN, MAYOR AND COUNCIL OF THE BOROUGH OF MIDDLESEX, MAYOR AND COUNCIL OF THE BOROUGH OF MILLTOWN, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MONROE, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NORTH BRUNSWICK, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PISCATAWAY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PLAINSBORO, MAYOR AND COUNCIL OF THE BOROUGH OF SAYREVILLE, MAYOR AND COUNCIL OF THE CITY OF SOUTH AMBOY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF SOUTH BRUNSWICK, MAYOR AND COUNCIL OF THE BOROUGH OF SOUTH PLAINFIELD, MAYOR AND COUNCIL OF THE BOROUGH OF SOUTH RIVER, MAYOR AND COUNCIL OF THE BOROUGH OF SPOTSWOOD, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WOODBRIDGE, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1979.
Decided September 11, 1979.
*465 Before Judges HALPERN, ARD and ANTELL.
Mr. William C. Moran, Jr. argued the cause for defendant Township of Cranbury (Messrs. Huff and Moran, attorneys).
Mr. Bertram E. Busch argued the cause for defendant Township Council of Township of East Brunswick (Messrs. Busch & Busch, attorneys; Mr. Marc Morley Kane on the brief).
Mr. Thomas R. Farino, Jr. argued the cause for defendant Township of Monroe.
*466 Mr. Joseph H. Burns argued the cause for defendant Township of North Brunswick.
Mr. Daniel S. Bernstein argued the cause for defendant Township of Piscataway (Messrs. Sachar, Bernstein, Rothberg, Sikora & Mongello, attorneys).
Mr. Joseph L. Stonaker argued the cause for defendant Township Committee of the Township of Plainsboro.
Mr. Barry C. Brechman argued the cause for defendant Township Committee of the Township of South Brunswick.
Mr. Sanford E. Chernin argued the cause for defendant Mayor and Council of the Borough of South Plainfield (Messrs. Chernin & Freeman, attorneys).
Ms. Marilyn J. Morheuser and Mr. Martin E. Sloane (pro hac vice) argued the cause for all plaintiffs (Messrs. Baumgart and Ben-Asher, attorneys).
The opinion of the court was delivered by ANTELL, J.A.D.
Defendants appeal from a judgment of the Chancery Division invalidating their zoning ordinances to the extent that they make inadequate provision for fair shares of low and moderate-income regional housing needs and requiring them to rezone in accordance with specified allocations.
Plaintiff Urban League is a nonprofit corporation which works to improve the economic conditions of racial and ethnic minority groups and alleges a special interest in the need for low and moderate-income housing. The individual plaintiffs are low and moderate-income persons residing in Northeastern New Jersey. They seek housing and employment opportunities for themselves and educational opportunities for their children in defendant municipalities, but claim these are foreclosed by defendants' allegedly exclusionary land use regulations. Plaintiffs *467 bring this action on their own behalf and on behalf of others similarly situated, pursuant to R. 4:32.
The 23 defendants originally sued compose all the municipalities in Middlesex County except for Perth Amboy and New Brunswick. During the proceedings below the complaint was unconditionally dismissed with respect to defendant Dunellen, and consent judgments of conditional dismissal were entered with respect to 11 other defendants. Of the remainder only Old Bridge (formerly known as Madison Township) did not appeal. Appeals are now being pursued only by Cranbury, East Brunswick, Monroe, Piscataway, Plainsboro, Sayreville, South Brunswick and South Plainfield. Also before us is plaintiffs' cross-appeal from the court's denial of relief requested beyond what was granted.
Defendants first contend that the trial judge erred in ruling that the individual plaintiffs had standing to urge state constitutional infirmities in defendants' zoning ordinances. In raising this issue defendants essentially contend that criteria for standing in these cases should be confined to those specifically applied in South Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151 (1975) (hereinafter Mt. Laurel). They argue that because these plaintiffs, except for one, neither reside in defendant municipalities nor have actively sought housing there they fail to qualify.
But New Jersey rules of standing are characterized by great liberality. The test is whether plaintiffs have a sufficient stake in the outcome of the proceedings and whether their position is truly adverse to that of defendants. Crescent Park Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107-108 (1971). As recently explained by our Supreme Court in Home Builders League of South Jersey Inc. v. Berlin Tp., 81 N.J. 127 (1979):
These prerequisites are inherently fluid and "in cases involving substantial public interest * * * `but slight private interest, added to and harmonizing with the public interest' is sufficient to give standing." Elizabeth Federal *468 Savings & Loan Ass'n v. Howell, 24 N.J. 488, 499 (1957). See also In re Quinlan, 70 N.J. 10, 34-35, cert. den. 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). (at 132).
It added that the Legislature has expressed the public interest in cases such as these by defining an "interested party" in the Municipal Land Use Law as "any person, whether residing within or without the municipality, whose right to use, acquire, or enjoy property is or may be affected by any action taken under this act * * *." N.J.S.A. 40:55D-4. Also see, Urban League of Essex Cty. v. Mahwah Tp., 147 N.J. Super. 28 (App. Div. 1977) certif. den. 74 N.J. 278 (1977).
The trial judge correctly resolved the issue of standing with respect to state constitutional issues in plaintiffs' favor.
On the cross-appeal the individual plaintiffs assert that the trial judge erred in denying them standing to argue violations of the 13th and 14th Amendments of the United States Constitution and violations of the Civil Rights Act of 1968, also known as the Fair Housing Act, 42 U.S.C.A. § 3601 et seq. In ruling as he did the trial judge applied principles formulated in Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). For reasons which we explained in Urban League of Essex Cty. v. Mahwah Tp., supra, 147 N.J. Super. at 33-34, this was error. New Jersey courts are not bound by federal rules of standing. The rights asserted by the individual plaintiffs could only have arisen under 42 U.S.C.A. § 3612(a) and, by the language of that statute, are enforceable "in appropriate State or local courts of general jurisdiction." See Urban League of Essex Cty. v. Mahwah Tp., supra.
Plaintiffs further claim, that the trial judge erred in dismissing the corporate plaintiff's complaint for racial discrimination under the foregoing federal statute. The reason given was that "no credible evidence of deliberate or systematic exclusion of minorities was before the court." Urban League of Greater New Brunswick v. Carteret, 142 N.J. Super. 11, 19 *469 (Ch.Div. 1976), certif. den. 74 N.J. 262 (1977).[1] Without deciding whether the evidence presented actually suffices to prove a violation, we conclude that the trial judge erred in requiring proof of a discriminatory intent since this ruling is in conflict with controlling authorities. It is settled that in the interpretation of federal statutes courts of this state are bound by decisions of the federal courts. Southern Pacific Co. v. Wheaton Brass Works, 5 N.J. 594, 598 (1950), cert. den. 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1951); Penbrook Hauling Co. v. Sovereign Constr. Co., 128 N.J. Super. 179, 185 (Law Div. 1974), aff'd 136 N.J. Super. 395 (App.Div. 1975).
The pertinent principles are contained in Metropolitan, etc. v. Arlington Heights, 558 F.2d 1283 (7 Cir.1977), cert. den. 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). There a landowner sued the defendant municipality to compel rezoning of plaintiff's property in order to permit construction of a federally financed low-cost housing project. The suit was brought under the Fair Housing Act, 42 U.S.C.A. 3601 et seq. Section 3604(a) thereof prohibits discrimination "because of race," and the Circuit Court of Appeals rejected the "narrow view" that this language requires a showing of a discriminatory purpose. Instead, it took the "broad view" that "a party commits an act `because of race' whenever the natural and foreseeable consequence of that act is to discriminate between races, regardless of his intent." At 1288. The court could not agree that "Congress in enacting the Fair Housing Act intended to permit municipalities to systematically deprive minorities of housing opportunities simply because those municipalities act discreetly." Id. at 1290. The holding of that decision, which we deem applicable hereto, was stated in the following language:
We therefore hold that at least under some circumstances a violation of Section 3604(a) can be established by a showing of discriminatory effect without a showing of discriminatory intent. [At 1290]
*470 The court then directed that in determining whether the particular circumstances of each case merit relief the following "four critical factors" be considered:
* * * (1) how strong is plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of Washington v. Davis, [426 U.S. 299, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)]; (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing. [At 1290]
Accord, United States v. Mitchell, 580 F.2d 789, 791 (5 Cir.1978); Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 146-148 (3 Cir.1977), cert. den. 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978); Smith v. Anchor Bldg. Corp., 536 F.2d 231, 233 (8 Cir.1976); United States v. Black Jack, Missouri, 508 F.2d 1179 (8 Cir.1974), cert. den. 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975), reh. den. 423 U.S. 884, 96 S.Ct. 158, 46 L.Ed.2d 115 (1975); United States v. Milwaukee, 441 F. Supp. 1377, 1382 (E.D.Wis. 1977).
We turn to the substantive issues of the appeal. The action was brought upon the Mt. Laurel principles that each developing municipality must "by its land use regulations, make realistically possible the opportunity for an appropriate variety and choice of housing for all categories of people who may desire to live there, of course including those of low and moderate income," and that its obligation "to afford the opportunity for decent and adequate low and moderate income housing extends at least to `* * * the municipalities' fair share of the present and prospective regional need therefor.'" 67 N.J. at 174, 187-188.
In formulating a standard by which to decide whether defendants had met their Mt. Laurel obligations, the trial judge designated Middlesex County as the regional area for which present and prospective housing needs had to be determined. *471 This finding rested upon acceptance of plaintiffs' proofs. He then found that the projected need for low and moderate-income housing in that region by the year 1985 which would have to be met by the 11 appealing municipalities, after deducting for subsidized replacement of existing substandard housing and the "filtering through" process as occupants moved to higher income housing, was 18,697 new units. The judge then distributed among the 11 municipalities the number of units necessary to bring each up to the county-wide proportion of 15% low and 19% moderate-income population. The total number of units so assigned was 4,030. This figure was deducted from 18,697, leaving 14,667 units. Finding that there was "no basis not to apportion the [remaining] units equally," he divided 14,667 by 11, resulting in a further allocation per municipality of 1,333 units, in addition to those already assigned. Urban League of Greater New Brunswick, supra, 142 N.J. Super. at 36-37. The judge further ruled that the number of units assigned to each of the 11 municipalities should be allocated 45% low and 55% moderate-income. He added that each municipality must rezone sufficient land to provide for the allocated number of units, which, for 8 of the 11, meant rezoning all remaining vacant acreage suitable for housing. Id. at 38.
In resolving a claim of exclusionary zoning under Mt. Laurel, the court's determination of what the applicable housing region shall be is of considerable moment, obviously since each municipality's responsibility must be measured in terms of the housing needs and resources of the region whose needs must be met. The paramount issue on this appeal, therefore, is the correctness of the trial judge's determination that Middlesex County constituted the appropriate housing region.
That the program envisioned by Mt. Laurel is far more appropriate for legislative, rather than judicial, implementation is a proposition which no longer needs elaboration. Oakwood at *472 Madison, Inc. v. Madison Tp., 72 N.J. 481, 531, 534, 541-542 (1977) (hereinafter Oakwood at Madison); Mytelka and Mytelka, "Exclusionary Zoning: A Consideration of Remedies," 7 Seton Hall L.Rev. 1, 5-6 (1975). Nevertheless, where the other branches of government do not act, the courts have no choice but to deal with the issue "as effectively as is consistent with the limitations of the judicial process." Oakwood at Madison, supra at 536.
Early guidance for the selection of a region is found in Mt. Laurel, supra, 67 N.J. at 189-190. There the court said:
The composition of the applicable "region" will necessarily vary from situation to situation and probably no hard and fast rule will serve to furnish the answer in every case. Confinement to or within a certain county appears not to be realistic, but restriction within the boundaries of the State seems practical and advisable.
In that case the court described as the appropriate region "the outer ring of the South Jersey metropolitan area, which area we define as those portions of Camden, Burlington and Gloucester Counties within a semicircle having a radius of 20 miles or so from the heart of Camden City." 67 N.J. at 162, 190.
The question took more specific form in Oakwood at Madison, supra, decided subsequent to the judgment of the trial court herein. In approaching the issue the court there emphasized that "the gross regional goal shared by the constituent municipalities be large enough fairly to reflect the full needs of the housing market area of which the subject municipality forms a part." Id. 72 N.J. at 536. We regard as particularly significant that defendant municipality in that case urged the Supreme Court to find that the appropriate housing region consisted of the same area utilized by the trial judge herein, i.e., that embraced by the boundaries of Middlesex County. But its contention was rejected, and the Supreme Court affirmed instead the trial court's conclusion that the appropriate region for *473 Madison Township[2] was that defined as the area from which, in view of available employment and transportation, the population of the township would be drawn, absent invalidly exclusionary zoning." Id. at 537. This formulation has been characterized as one which "clearly points in the right direction." 3 Williams, American Land Planning Law, § 66.12 at 32 (1975). The court repeated its admonition made in Mt. Laurel that the concept of a county "per se" as the appropriate housing region is not "realistic," and stressed that consideration should be given to "the areas from which the lower income population of the municipality would substantially be drawn absent exclusionary zoning." (Emphasis in original). 72 N.J. at 539, 543.
Obviously, the mere physical boundaries of the State's political subdivisions in no way respond to these criteria. Indeed, in illustrating its requirements the court furnished "examples *474 of regions large enough and sufficiently integrated economically to form legitimately functional housing market areas" which were created under fair share allocation plans in other states. These were described thus:
* * * The Miami Valley (Dayton, Ohio) Regional Planning Commission includes five counties and 31 municipalities as far as 60 miles from the center of Dayton. The Metropolitan Washington GOG (see supra p. 529) covers 15 counties and local governmental jurisdictions, including the District of Columbia, San Bernardino County, California, although a county, occupies 20,000 square miles. The Metropolitan Council of the Twin Cities (Minneapolis-St. Paul) covers 7 counties, including almost 300 jurisdictions, with a total population of 1.9 million. The DVRPC, as already shown, comprises nine counties in Pennsylvania and New Jersey. The present significance of the cited plans is that their regions are of such size that it is difficult to conceive of a substantial demand for housing therein coming from any one locality outside the jurisdictional region, even absent exclusionary zoning. The essence of the cited plans is "to provide families in those economic categories [low and moderate] a choice of location." 16 Trends on Housing, No. 2 p. 2 (1972). [72 N.J. 539]
Not overlooked is the fact that in Oakwood at Madison the court was dealing with but a single municipality, whereas here virtually all the municipalities in the county have been joined as defendants. We cannot conceive, however, in what way the appropriateness of a geographical area by which to determine low and moderate-income regional housing needs is related to the number of municipalities in the projected area which have been made parties defendant.
In support of his conclusion that Middlesex County constituted a housing region for purposes of this action, the trial judge gave the following reasons:
* * * Middlesex County is a Standard Metropolitan Statistical Area as fixed by the United States Office of Management and Budget. Such an area is specified as an integrated economic and social unit with a large population nucleus. Twenty of the 25 municipalities joined in a Community Development Block Grant application as an "urban county" under the regulations of the Housing and Community Development Act of 1974, 42 U.S.C.A. § 5301 et seq. A county master plan and a wealth of applicable statistics are available through the county planning board. Someone employed in any municipality of the county may seek housing in any other municipality, and someone residing in any *475 municipality may seek employment in any other municipality. Residence within walking distance of one place of employment, or within the same municipality, is no longer a desideratum. Nor is the availability of public transportation a major factor. The county is criss-crossed by arterial highways, including the New Jersey Turnpike and Garden State Parkway. Mobility by automobile is the rule. A large portion of even low-income wage earners within the county own automobiles and many of those travel regularly 20 miles or more to their places of employment. The entire county is within the sweep of suburbia. Its designation as a region for the purpose of this litigation, within larger metropolitan regions, is sustained. [142 N.J. Super. at 21-22]
These do not supply what was deemed to be critical in Oakwood at Madison, namely, that the area of the region be large enough to ensure that it is one from which the prospective population of the municipality would be substantially drawn in the absence of exclusionary zoning. Many of the defendants are located within only a few miles of the county line. They are accessible to major highways and, as the trial judge found, lie within either the New York or the Philadelphia metropolitan regions. 142 N.J. Super. at 21. In the face of these circumstances nothing in the findings or the recorded evidence could support a realistic expectation that the prospective population of these municipalities would be substantially drawn from within the confines of the county.
We conclude that the Supreme Court's determination in Oakwood at Madison, that Middlesex County is not appropriate as a housing region, governs the facts hereof.
We agree also with defendants' contention that the trial judge, having determined that the ordinances were deficient under Mt. Laurel standards, should not have undertaken to make a formulaic allocation of the region's unmet housing needs among defendant municipalities.[3] As the court pointed out in *476 Mt. Laurel, "The municipality should first have full opportunity to itself act without judicial supervision," noting that if the municipality should "not perform as we expect, further judicial action may be sought by supplemental pleading in this cause." 67 N.J. at 192. And in Oakwood at Madison, supra, 72 N.J. at 539, it further stated that "it would not generally be serviceable to employ a formulaic approach to determination of a particular municipality's fair share"  a point of view frequently reiterated in that opinion. See at 499, 525, 541, 543-544, 371 A.2d 1192. Additionally, the court recently gave expression to an even more restrictive attitude concerning the allowable judicial remedy when it wrote the following in Pascack Ass'n, Ltd. v. Washington Tp., 74 N.J. 470 (1977):
But insofar as review of the validity of a zoning ordinance is concerned, the judicial branch is not suited to the role of an ad hoc super zoning legislature, particularly in the area of adjusting claims for satisfaction by individual municipalities of regional needs, whether as to housing or any other important social need affected by zoning. The closely contested expert planning proofs before the trial court with respect to the utility of the subject tract for various kinds of housing, office and research uses, hospitals and nursing homes, banks and public recreational facilities, is illustrative of the reasonable differences of opinion in this area. We went as far in that general direction as comports with the limitations of the judicial function, in our determinations in Mount Laurel, supra, and Oakwood at Madison, supra. The sociological problems presented by this and similar cases, and of concern not only to our dissenting brother, but ourselves, call for legislation vesting appropriate developmental control in State or regional administrative agencies. [Citations omitted]. The problem is not an appropriate subject of judicial superintendence. Clearly the legislature, and the executive within proper delegation, have the power to impose zoning housing regulations on a regional basis which would ignore municipal boundary lines and provide recourse to all developable land wherever situated, Oakwood at Madison, ubi cit. supra. [At 487-488]
As we stated earlier, plaintiffs have failed to prove the appropriate region for which defendants have an obligation *477 to provide their fair share of opportunity for construction of low and moderate-income housing. Since the definition of such a region is essential to prove that defendants exclude such housing through their choice of zoning policies (a choice, we add, which must be proved "arbitrary," Pascack Ass'n, Ltd. v. Washington Tp., supra at 484), it follows that the proofs were insufficient to support the claim of exclusionary zoning.
We have considered, but decided against, remanding the matter for a new trial. To do so would merely serve the purpose of allowing plaintiffs to pursue a theory which they eschewed in the earlier trial on an issue as to which they had the burden of proof. See Budget Corp. of America v. De Felice, 46 N.J. Super. 489, 494 (App.Div. 1957). Accordingly, the judgment is reversed.
NOTES
[1] An application was made to the Supreme Court for direct certification to the trial court.
[2] Madison Township is also a nonappealing defendant in this case. Here its fair share obligation has been measured in terms of present and prospective low and moderate-income housing needs within the very region the Supreme Court held inapplicable to this defendant in Oakwood at Madison, supra. As we note above, the court there proceeded on the basis of a much larger area. The question suggested, which we are not called upon to answer, is whether an ordinance, once invalidated for exclusionary zoning and then amended to meet Mt. Laurel criteria, may nevertheless be repeatedly challenged on the same grounds but by different parties in successive suits involving distinctive proofs and theories as to the relevant housing region, its need for low and moderate income housing, and the extent of each municipality's fair share thereof.

The uncertainty could be resolved, of course, by statutory or administrative standards and definitions which maintain their stability as a matter of law from case to case. See Oakwood at Madison, supra, 72 N.J. at 531; id. at 623 et seq. (Mountain, J., concurring and dissenting opinion). In default thereof the Mt. Laurel form of relief must be applied on the basis of judicially defined regions and judicial determinations as to each municipality's fair share. If these amount to nothing more than factual findings, governed by proofs which vary from case to case, and which are without precedential significance, one is left to speculate about the confusion which may arise from conflicting adjudications and the impact this may have upon any well ordered program of land use regulation.
[3] Even if the action lay within its authority, we could not approve the manner in which the trial judge arbitrarily distributed the duty to meet the county's unmet needs equally among the 11 municipalities without taking into account their "variety of circumstances and conditions" and considering what effect the allocation would have upon the "advisability and suitability" of each zoning plan thereby affected. See Pascack Ass'n, Ltd. v. Washington Tp., 74 N.J. 470, 482 (1977).