URBAN LEAGUE OF GREATER NEW BRUNSWICK, NOW KNOWN AS CIVIC LEAGUE OF GREATER NEW BRUNSWICK, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, AND FANNIE BOTTS, LYDIA CRUZ AND JEAN WHITE, PLAINTIFFS, v. MAYOR AND COUNCIL OF THE BOROUGH OF CARTERET, MAYOR AND COUNCIL OF THE BOROUGH OF DUNELLEN, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EDISON, MAYOR AND COUNCIL OF THE BOROUGH OF HELMETTA, MAYOR AND COUNCIL OF THE BOROUGH OF HIGHLAND PARK, MAYOR AND COUNCIL OF THE BOROUGH OF JAMESBURG, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MADISON, MAYOR AND COUNCIL OF THE BOROUGH OF METUCHEN, MAYOR AND COUNCIL OF THE BOROUGH OF MIDDLESEX, MAYOR AND COUNCIL OF THE BOROUGH OF MILLTOWN, MAYOR AND COUNCIL OF THE BOROUGH OF SAYREVILLE, MAYOR AND COUNCIL OF THE CITY OF SOUTH AMBOY, MAYOR AND COUNCIL OF THE BOROUGH OF SOUTH RIVER, MAYOR AND COUNCIL OF THE BOROUGH OF SPOTSWOOD, AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WOODBRIDGE, DEFENDANTS, AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF CRANBURY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EAST BRUNSWICK, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MONROE, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NORTH BRUNSWICK, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF OLD BRIDGE, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PISCATAWAY, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PLAINSBORO, TOWNSHIP COMMITTEE OF THE TOWNSHIP OF SOUTH BRUNSWICK, AND MAYOR AND COUNCIL OF THE BOROUGH OF SOUTH PLAINFIELD, DEFENDANTS–APPELLANTS AND CROSS–RESPONDENTS.

Argued January 3, 1989—Decided July 11, 1989.

*Phillip Lewis Paley* argued the cause for appellants and cross-respondents (*Kirsten, Simon, Friedman, Allen, Cherin & Linken,* attorneys; *Phillip Lewis Paley* and *Lionel J. Frank,* on the briefs).

*Barbara Stark* argued the cause for respondents and cross-appellants (*John M. Payne* and *Barbara Stark,* Rutgers Law School, Constitutional Litigation Clinic, attorneys; *Barbara Stark* and *John M. Payne,* on the brief).

*Stephen M. Eisdorfer,* Assistant Deputy Public Advocate, argued the cause for *amicus curiae,* Public Advocate of the State of New Jersey (*Alfred A. Slocum,* Public Advocate, attorney; *Stephen M. Eisdorfer* and *John P. Thurber,* Assistant Deputy Public Advocate, on the brief).

The opinion of the Court was delivered by

HANDLER, J.

Plaintiffs, representing persons in need of affordable housing, contend that they are entitled to attorney's fees as successful civil rights litigants. The litigation in which they prevailed

was brought on a complaint against numerous municipal defendants charging that their local zoning ordinances were invalid because of their exclusionary impact on persons of low and moderate incomes in need of affordable housing. The complaint was based on the *Mount Laurel* doctrine, which implicates state statutory and constitutional standards, and also on the Federal Fair Housing Act. 42 *U.S.C.* § 3601 to 3619 (Title VIII). As prevailing parties, plaintiffs contend, they should be able to recover attorney's fees under section 3612(c) of Title VIII. The difficulty with this position is that throughout this prolonged litigation there was no adjudication of the alleged violation of Title VIII. Further, although this litigation was initiated approximately fifteen years ago and their substantive rights were adjudicated more than six years ago, plaintiffs had never sought or claimed attorney's fees until this application.

## I.

The plaintiffs, Urban League of Greater New Brunswick and individuals Fannie Botts, Lydia Cruz, and Jean White, brought suit in 1974 against twenty-three of the twenty-five municipalities in Middlesex County, alleging that their respective zoning ordinances violated various State and federal statutes, as well as the New Jersey and United States Constitutions. One of plaintiffs' claims was based on the provisions of Title VIII, the Federal Fair Housing Act.

In May 1976, the Superior Court, Chancery Division, ruled that the zoning ordinances of eleven of the defendant municipalities were exclusionary under the standards of *Southern Burlington County NAACP v. Township of Mount Laurel,* 67 *N.J.* 151, *cert.* den., 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.*2d 28 (1975) (*Mount Laurel I*). However, plaintiffs' claims under Title VIII, as well as under the thirteenth and fourteenth amendments to the United States Constitution, were dismissed. While the dismissal of the individual plaintiffs was based on a

lack of standing, the claims of the corporate plaintiffs were dismissed because "no credible evidence of deliberate or systematic exclusion of minorities was before the Court." *Urban League of New Brunswick v. Mayor and Council of Borough of Carteret*, 142 *N.J.Super.* 11, 19 (Ch.Div.1976), certif. den., 74 *N.J.* 262 (1977). The defendants appealed and the plaintiffs cross-appealed.

The Appellate Division reversed the trial court. On the merits, it ruled that Middlesex County was not a proper housing region and that some of the zoning ordinances were not exclusionary. *Urban League of New Brunswick v. Mayor of Carteret*, 170 *N.J.Super.* 461, 475 (1979). It also ruled that the individual plaintiffs had standing to argue violations of Title VIII, and, further, that the corporate plaintiffs did not have to prove discriminatory intent under Title VIII. *Id.* at 468–69. Nevertheless, the court concluded that plaintiffs had failed to sustain the burden of proof that the defendants' zoning ordinances violated *Mount Laurel I, id.* at 477 and refused to disturb the dismissal of the thirteenth and fourteenth amendment claims.

This Court granted certification of the case, 82 *N.J.* 283 (1980), and considered it with five other cases involving the validity of local zoning ordinances with respect to their exclusionary impact. *Southern Burlington County NAACP v. Mount Laurel Township*, 92 *N.J.* 158 (1983) (*Mount Laurel II*). However, only seven of the defendants in this case participated in the *Mount Laurel II* appeal: Cranbury, East Brunswick, Monroe, Piscataway, Plainsboro, South Brunswick, and South Plainfield. The Court thereafter reversed the Appellate Division and reinstated the trial court's determination that the zoning ordinances were exclusionary and violated the police-power, due-process, and equal-protection provisions of the State Constitution. *Mt. Laurel II*, 92 *N.J.* at 349. The plaintiffs' thirteenth and fourteenth amendment claims were not addressed; the Court stated that "it [did] not appear that [these claims were] being pressed before this Court." *Id.* at 341.

Furthermore, the Court did not expressly address the plaintiffs' Title VIII claim.

Thereafter, the Legislature enacted the New Jersey Fair Housing Act, *L.*1985, *c.* 222, *N.J.S.A.* 52:27D–301 to –329, which created the Council on Affordable Housing (COAH). *N.J.S.A.* 52:27D–305. The effect of the state Fair Housing Act was to transfer jurisdiction over *Mount Laurel* cases from the courts to COAH. The function of COAH under the statute was to mediate and review claims challenging the exclusionary impact of local zoning ordinances. *N.J.S.A.* 52:27D–315. It also was authorized to determine appropriate housing regions and each municipality's obligation to provide affordable housing. *N.J.S. A.* 52:27D–307. The validity of this legislation was challenged in court. In February 1986, this Court sustained the constitutionality of the Fair Housing Act and, in accordance with its provisions, ordered pending *Mount Laurel II* cases transferred to COAH. *Hills Dev. Co. v. Bernards Township,* 103 *N.J.* 1 (1986).

In August 1986, plaintiffs made applications for attorney's fees, expert fees, and costs. They argued that they were successful litigants under *Mount Laurel II* and that they were entitled to fees pursuant to *Rule* 4:42–9(a)(8) and 42 *U.S.C.* section 3612(c), the attorney's fees provision of Title VIII.

The issue framed in the attorney's fee motion was whether the economic discrimination established under *Mount Laurel II* also established a violation of Title VIII. The trial court ruled that the same operative facts necessary to show discrimination under *Mount Laurel II* were not the same facts necessary to show discrimination under Title VIII, namely, discrimination based on race, color, religion, sex, or national origin in the sale, rental, financing, or brokerage of housing. As recapitualized by the Appellate Division, the trial court expressed the view that "[w]hile it may be that the impact was most greatly felt by nonwhites, minorities, no court has found low or moderate income to be equivalent to race." 222 *N.J.Super.* 131, 137

(App.Div.1988). The trial court also believed, according to the Appellate Division, that the evidence presented by the plaintiffs in 1976 "attempted to show the impact that excluding [through zoning] has on minorities," but nevertheless concluded that the showing had not been made and ruled against the plaintiffs. *Id.* at 136.

The Appellate Division, *id.* at 131, reversed and remanded for a trial *de novo* that would be limited to the original trial record of 1976, to determine whether there was sufficient evidence of discrimination to establish substantive violations of Title VIII, entitling plaintiffs to an award of attorney's fees under section 3612(c). We granted certification. 110 *N.J.* 310 (1988).

## II.

■ Title VIII was passed as a congressional attempt to combat discrimination in housing. Sections 3604, 3605, and 3606 are substantive provisions that define some of the activities prohibited by Title VIII. Section 3612(c) allows a prevailing plaintiff under Title VIII to receive attorney's fees. A precondition to the award of such fees is that the plaintiff is financially unable to assume the burden of such fees. Section 3612(c) is otherwise unspecific about the standards that should be applied in determining entitlement to fees by a prevailing party.

Some evidence of the congressional intendment in the application of this fee provision can be found in a similar congressional enactment, the Civil Rights Attorney's Fee Act of 1976, 42 *U.S.C.* § 1988 (section 1988). Congress passed section 1988 in order to remedy "anomalous gaps" created in the award of attorney's fees by the case of *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 *U.S.* 240, 95 *S.Ct.* 1612, 44 *L.Ed.*2d 141 (1975). S.Rep. No. 1011, 94th Cong., 2d Sess. 1, *reprinted in* 1976 *U.S.Code Cong. & Ad.News* 5908, 5911.

Prior to *Alyeska,* lower federal courts had adopted a policy of awarding attorney's fees to successful plaintiffs who brought

suit under civil rights statutes, even if the statute did not contain an attorney's fee provision. The dominant reasoning of such cases was that in the civil rights area the plaintiff was acting not just as a private individual, but also as a private attorney general vindicating the rights of the public. *See, e.g., Newman v. Piggie Park Enters., Inc.,* 390 *U.S.* 400, 88 *S.Ct.* 964, 19 *L.Ed.*2d 1263 (1968) (though based on the interpretation of a statute with a specific attorney's fees provision, namely, Title II of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000a–3(b), Court indicated that public policy can be vindicated by private litigants). *Alyeska,* however, countermanded this practice. The Supreme Court stressed that "congressional utilization of the private-attorney-general concept can in no sense be construed as a grant of authority to the Judiciary ... to award attorneys' fees whenever the courts deem the public policy furthered by a particular statute important enough to warrant the award." *Alyeska, supra,* 421 *U.S.* at 263, 99 *S.Ct.* at 1624, 44 *L.Ed.*2d at 156–57. Section 1988 was passed to remedy the "devastating impact" *Alyeska* had on civil rights litigation. H.R.Rep. No. 1558, 94th Cong., 2d Sess. 3 (1976).

Section 3612(c) serves a similar remedial purpose. Nevertheless, it is silent with respect to the outcome of fee claims in a fair-housing case like this one in which claims are raised under both Title VIII and state laws. Plaintiffs, as noted, presented both federal Title VIII claims and non-federal *Mount Laurel* claims. The state court granted relief based only on the state claims and did not address the federal Title VIII issues. It is not apparent under section 3612(c) that a party is considered a "prevailing party" if he or she prevails only on non-Title VIII grounds.

The parallel fee provision of the Civil Rights Attorney's Fee Act, section 1988, sheds light on the resolution of this kind of dilemma in which one cause of action provides legal fees and the other does not. When Congress considered the enactment of section 1988, it noted that *Alyeska,* "allowed [fees] in a housing discrimination suit brought under Title VIII of the Civil

Rights Act of 1968, but not in the same suit brought under 42 *U.S.C.* § 1982, a Reconstruction Act protecting the same rights." S.Rep. No. 1011, *supra,* at 4, *reprinted in* 1976 *U.S. Code Cong. & Ad.News* at 5911. It passed section 1988 to fill the kinds of "anomalous gaps" created by *Alyeska. Ibid.* Thus, as evidenced by this comment on *Alyeska,* it is inferable that Congress felt that Title VIII and section 1982 were comparable. Similar reasoning suggests that in the enactment of section 1988 Congress intended that attorney's fees claims for a violation of § 1982 be treated the same for successful litigants under Title VIII and section 3612(c). Thus, in interpreting a fee/non-fee situation under section 3612(c), where congressional intent is not otherwise obvious, one should apply the congressional intent with respect to section 1988 so that fee claims under section 1982 and Title VIII are treated consistently.[1]

In applying various other ambiguous federal statutory-fees provisions, the Supreme Court apparently agreed that it was proper to apply section 1988 decisional analysis. *See, e.g., Hensley v. Eckerhart,* 461 *U.S.* 424, 433 n. 7, 103 *S.Ct.* 1933, 1939 n. 7, 76 *L.Ed.*2d 40, 50 n. 7 (1983) ("The standards set

---

[1]Congress addressed the fee/non-fee situation in its legislative history for section 1988. The House report gave the following guidance:

To the extent a plaintiff joins a claim under [§ 1981, § 1982, § 1983, § 1985, or § 1986] with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other claim for the purpose of awarding counsel fees. *Morales v. Haines,* 486 *F.*2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional [sic] claim is dispositive. *Hagans v. Lavine,* 415 *U.S.* 528 [94 *S.Ct.* 1372, 39 *L.Ed.*2d 577] (1974). In such cases, if the claim for which fees may be awarded meets the "substantiality" test, *see Hagans v. Lavine, supra; United Mine Workers v. Gibbs,* 383 *U.S.* 715 [86 *S.Ct.* 1130, 16 *L.Ed.*2d 218] (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact." *United Mine Workers v. Gibbs, supra* at 725 [86 *S.Ct.* at 1138]. [H.R.Rep. No. 1558, *supra,* at 4 n. 7.]

forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' "); *New York Gaslight Club v. Carey*, 447 *U.S.* 54, 70 n. 9, 100 *S.Ct.* 2024, 2034 n. 9, 64 *L.Ed.*2d 723, 738 n. 9 (1980) (section 1988 and Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e–5(c), are similar in purpose and design and should follow the same judicial decisions in comparable circumstances). It follows that the interpretation of section 1988 that allows recovery of fees in the fee/non-fee situation should govern our understanding of section 3612(c).

The history of section 1988 yields additional evidence that fees were intended to be available to a successful litigant asserting alternatively both Title VIII and non-Title VIII claims in appropriate circumstances. An example of this kind of case is *Morales v. Haines*, 486 *F.*2d 880 (7th Cir.1973), one of the cases cited in the House Judiciary Report. *Supra* at 544 n. 1. In *Morales*, the plaintiff, a black citizen, brought a suit claiming violations of 42 *U.S.C.* sections 1982 and 1983, and Title VIII. He sought attorney's fees under section 3612(c). The suit was based on the refusal by city officials to issue building permits that were necessary to build federally subsidized housing in the city. The district court determined only the non-fee claim, by ruling that the refusal to issue the permits was a violation of the equal protection clause of the fourteenth amendment because the classification was based on the economic status of the potential owners. It then denied attorney's fees. On appeal, the Seventh Circuit concluded that fees could be awarded and remanded the case for a "finding of the presence or absence of racial discrimination" to determine the statutory violations and plaintiff's claims for damages and attorney's fees. *Morales, supra,* 486 *F.*2d at 882.

Thus, *Morales,* impliedly approved by Congress in its enactment of section 1988, is a persuasive indication that in similar circumstances fees could be available to a prevailing plaintiff in a fee/non-fee fair housing litigation. The issue remains, however, how the methodology of section 1988 should be applied in

determining the award of attorney's fees to a prevailing party in a case presenting both fee and non-fee claims. We again look to federal experience explicating this issue.

## III.

One of the critical elements that has evolved in determining the availability of attorney's fees in civil rights litigation is the timeliness of the fee application. In cases that present both express fee claims and non-fee claims, this is particularly significant. The meritorious disposition in these cases frequently will not have included a determination of the fee claims, thus requiring the court to undertake a further consideration of underlying issues to decide any entitlement to fees. Hence, the ability to review and analyze the underlying claim can be significantly influenced by the timing of such an application for fees. Thus, in dealing with the question of the appropriate standards for applying section 3612(c) of Title VIII, based in large measure on the experience developed under section 1988, the timeliness of an application for attorney's fees is a highly relevant consideration.

In *White v. New Hampshire Department of Employment Security*, 455 *U.S.* 445, 102 *S.Ct.* 1162, 71 *L.Ed.*2d 325 (1982), the Supreme Court addressed what constitutes a timely application for attorney's fees under section 1988. The prevailing party filed a motion requesting attorney's fees approximately four and one-half months after the entry of a final judgment. The district court granted the fee award but the First Circuit Court of Appeals reversed. The appellate court held that petitioner's post-judgment motion for attorney's fees constituted a motion to alter or amend the judgment, governed by the ten-day time limit of Rule 59(e) of the Federal Rules of Civil Procedure. The Supreme Court reversed the First Circuit, finding "a request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action—issues to which Rule 59(e) was never intended to apply." 455 *U.S.* at 451, 102

*S.Ct.* at 1166, 71 *L.Ed.*2d at 331. An application for attorney's fees is "uniquely separable from the cause of action to be proved at trial," which cannot be commenced until one party has "prevailed." *Id.* at 452, 102 *S.Ct.* at 1166, 71 *L.Ed.*2d at 331.

In deciding that Rule 59(e) did not apply to a collateral matter such as attorney's fees awards, the Supreme Court addressed the issue of what constitutes a timely application for such fees. It reiterated the First Circuit's concern of avoiding "fragmented appellate review and unfair postjudgment surprise to nonprevailing defendants" occasioned by late attorney's fees motions. *Id.* at 452, 102 *S.Ct.* at 1167, 71 *L.Ed.*2d at 332.[2] The Court stated:

> Section 1988 authorizes the award of attorney's fees "in [the] discretion" of the court. We believe that this discretion will support a denial of fees in cases in which a postjudgment motion unfairly surprises or prejudices the affected party. Moreover, the district courts remain free to adopt local rules establishing timeliness standards for the filing of claims for attorney's fees. And of course the district courts generally can avoid piecemeal appeals by promptly hearing and deciding claims to attorney's fees. Such practice normally will permit appeals from fee awards to be considered together with any appeal from a final judgment on the merits. [*Id.* at 454, 102 *S.Ct.* at 1167–68, 71 *L.Ed.*2d at 333.]

The Supreme Court also noted that "as different jurisdictions have established different procedure for the filing of fee appli-

---

[2]The Eighth Circuit in a decision cited approvingly by the Supreme Court in *White* discussed the issue of fragmented appeals by stating:

This court has a real concern over fragmentation of appeals. In the interests of orderly and expeditious consideration of all issues arising from a single lawsuit, disputes on appeal over the merits, as well as disputes regarding the allowance of attorney's fees to a prevailing party, should ordinarily be considered and decided by this court in either a single or consolidated appellate proceeding. This court deems it essential that all district courts follow a consistent practice of promptly hearing and deciding attorney's fees claims in civil rights and other cases so that any appeal by an aggrieved party from the allowance or disallowance of fees can be considered by this court together with any appeal taken from a final judgment on the merits. [*Obin v. District No. 9 Int'l Ass'n of Machinists and Aerospace Workers,* 651 *F.*2d 574, 583 (8th Cir.1981).]

cations, there may be valid local reasons for establishing different time limits." *White v. New Hampshire Dep't of Employment Sec., supra*, 455 *U.S.* at 454 n. 16, 102 *S.Ct.* at 1168 n. 16, 71 *L.Ed.*2d at 333 n. 16.

On remand the First Circuit followed the Supreme Court's reasoning and found that where no applicable local rule existed, "the determination of timeliness rested within the sound discretion of the district court." 679 *F.*2d 283, 285 (1st Cir.1982). It then awarded attorney's fees based on the original trial judge's discretion. *Ibid.* The court stated:

> The delay here—approximately four and one-half months after the entry of the consent decree—was considerable, but it was not so extreme, given all the other circumstances of this case, as to necessitate a finding that the request was untimely, and the district court did not make one. *See* 629 *F.*2d at 701. Although well aware of the time involved, the district court plainly did not consider the motion as having been delayed unreasonably. [*Ibid.*]

Accordingly, the standards on the timeliness of attorney's fees motions established in *White* has been implemented throughout the federal court system with many district courts establishing local rules for attorney's fees applications. *See, e.g., Smith v. Bowen*, 815 *F.*2d 1152, 1156 (7th Cir.1987) ("The Northern District of Illinois had adopted a local rule imposing a 90–day time limit on the filing of attorneys' fee petitions in civil proceedings. *See* N.D.Ill.Local Rule 46"); *Obin v. District No. 9 of Int'l Ass'n, supra*, 651 *F.*2d at 583 (suggesting "that district courts adopt a uniform rule requiring the filing of a claim for attorney's fees within twenty-one days after entry of judgment); *Amico v. New Castle County*, 654 *F.Supp.* 982, 991 (D.Del.1987) (Local Rules of Civil Practice for the U.S. District Court for the District of Delaware requires attorney's fee motions to be filed within twenty-one days after time of appeal has expired or after receipt of the mandate of the Third Circuit Court of Appeals). We note that both the United States District Court for the District of New Jersey and the United States Court of Appeals for the Third Circuit have exercised the power granted to them under *White* to promulgate rules governing timely application for attorney's fees. The District Court re-

quires that an affidavit for attorney's fees be filed within thirty days of the entry of judgment or order. D.C.N.J. *R.* 12; *R.* 46. The Circuit Court requires an application for attorney's fees must be made within thirty days of the entry of judgment or fourteen days after the court's disposition of a petition for rehearing or suggestion for rehearing. 3rd Cir. *R.* 27. Such time limits should be set with a view to enable a prevailing party to bring an informed motion for fees, to encourage settlements, and to allow the court in the interests of efficiency to consolidate any appeals on attorney's fees with appeals on the merits. *Neidhardt v. Holmes,* 701 *F.*2d 553, 556 (5th Cir.1983). Finally, state courts have also established rules under the mandate in *White. See, e.g., Gumbhir v. Kansas State Bd. of Pharmacy,* 231 *Kan.* 507, 646 *P.*2d 1078, 1086 (1982) (court adopts rule that attorney's fees under § 1988 must be filed within thirty days after judgment), *cert.* den., 459 *U.S.* 1103, 103 *S.Ct.* 724, 74 *L.Ed.*2d 950 (1983).

In addition, in cases in which these local rules were violated or no local rule existed, federal courts have relied on the discretion endorsed by the Supreme Court to decide if an attorney's fee motion should be granted. In several cases, attorney's fees motions made well within one year of a trial have been allowed in the absence of unfair prejudice to the defendant. *See, e.g., Perry v. O'Donnell,* 759 *F.*2d 702, 704 (9th Cir.1985) (eight month delay found reasonable when defendants were on notice that fees were being requested); *Inmates of Allegheny County Jail v. Pierce,* 716 *F.*2d 177, 179 (3d Cir.1983) (in a "no rule" jurisdiction, no abuse of discretion of district court to allow attorney's fees motion based on no unfair surprise or prejudice to defendant when filed five months after trial and six months after hearing); *Masalosalo ex rel. Masalosalo v. Stonewall Ins. Co.,* 718 *F.*2d 955, 957 (9th Cir.1983) (101–day delay allowed); *McQuiston v. Marsh,* 707 *F.*2d 1082, 1084 (9th Cir.1983) (three-month delay allowed). Other courts, however, have denied postjudgment motions for attorney's fees as untimely when they violated established local rules even

when not otherwise substantially delayed. *See, e.g., Pitts v. Freeman,* 755 *F.*2d 897, 898 (11th Cir.1985) (denied fee motion filed three months after judgment that was not in compliance with local rule requiring that motion be filed "within 15 days of the entry of final judgment"); *Zentek Corp. v. Internal Revenue Service,* 596 *F.Supp.* 324, 325 (E.D.Mich.1984) (court denied request for attorney's fees made five months after dismissal of case when local rule gave attorney thirty days to file motions or otherwise waive right to attorney's fees).

Many of the federal cases have stressed the flexibility of the court's discretion in entertaining fee applications. *Amico v. New Castle County, supra,* 654 *F.Supp.* at 994. Delay alone might not be determinative, but it will work against an applicant if there is a detrimental change of position. *Fulps v. City of Springfield, Tennessee,* 715 *F.*2d 1088, 1096 (6th Cir.1983).

An important case denying an untimely motion for attorney's fees is *Baird v. Bellotti,* 724 *F.*2d 1032 (1st Cir.), *cert.* den., 467 *U.S.* 1227, 104 *S.Ct.* 2680, 81 *L.Ed.*2d 875 (1984). In that case, the First Circuit discussed why motions filed eight months and thirty months late respectively were plainly unreasonable but found only the thirty-month delay prejudicial. *Id.* at 1033. The trial court had found prejudice without an elaborate fee hearing because "a party guilty of an unexcused substantial delay should not be entitled to impose that great burden [of a fee hearing], and in this instance the court [would impose] the burden on itself and other litigations as well as ... on the defendant" with any further proceedings. *Id.* at 1034. The trial court found the fee claim by attorney Baird, which was thirty months late, to be prejudicial because: (1) the "loss of witnesses or their memories or [the] loss of the judge's own memory, is likely to be particularly harmful to the defendant" (*ibid.*) ˙ in attacking the lodestar figure; and (2) Baird's fee claim included services as far back as 1974 and included both trial and appellate activities and the thirty-month delay added to the defendant's and the court's task of reconstruction of the accuracy of the fees requested. *Id.* at 1036. These factors,

along with the unjustified length of delay, were found by the First Circuit to constitute "a level of actual prejudice sufficient to meet the Supreme Court's standard for the denial of attorney's fees under 42 U.S.C. § 1988." *Ibid.* For the eight month delay for attorney's fees by Planned Parenthood League of Massachusetts (PPLM) attorneys, however, the court found the delay unreasonable, unjustified, but not prejudicial. The First Circuit stated:

> We distinguish between Baird and PPLM primarily because the work for which PPLM's attorneys sought compensation is so much more easily appraisable. We are not persuaded that the eight months that went by made it significantly more difficult for the district court to appraise, or the defendant to challenge, the services said to have been performed. The services in Baird related to a number of complex trial and appellate proceedings over a five-year period, but PPLM's work consisted of arguing and briefing a single case in the Supreme Court, ... [*Ibid.*]

The philosophy of the *White* decision concerning the timeliness of fee applications has also been extended to the relationship between section 1988 fee applications and other statutory attorney's fees provisions without explicit language on procedures applicable to such fee motions. This extension of the *White* doctrine to statutes providing for attorney's fees that are similar to section 1988 has given consistency and cohesiveness to the federal approach in vindicating federal rights. For example, in *In re Ruben*, 825 F.2d 977, 982 (6th Cir.1987), the Sixth Circuit found that the language of 42 U.S.C. § 2000e–5(k) parallels § 1988 and therefore falls within the *White* philosophy on what constitutes a timely application for attorney's fees. In *Zentek v. IRS, supra*, 596 F.Supp. at 325–26, the court found that an application for attorney's fees under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) should be governed by *White* and the local rule established under *White*. Thus, any federal statutory fee provision with or without time limitations that is similar to section 1988 should be governed by *White*.

■ In summary, the *White* analysis has been applied to federal fee provisions that are similar to section 1988, but have no express time restrictions for fee motions. We are satisfied

that the law established in *White,* and the federal cases that have followed *White,* including their timeliness standards, should govern our interpretation and application of section 3612(c).

## IV.

We approach this case as one involving an application for attorney's fees that is not controlled by express rules of limitation or timeliness. As noted, the federal courts of this jurisdiction have adopted local rules prescribing the time limitations for such application. *Supra* at 548. Thus, if plaintiff had brought its action in federal court, its application for attorney's fees would not have been timely. However, because other grounds dictate the result we reach, we do not need to decide what preclusive effect the violation of the federal rules of limitation should have on this fee application.[3]

---

[3]It should be noted that when an action is brought in a state court to enforce rights or claims under federal law, the Supremacy Clause of the United States Constitution requires that federal law and policy be applied by the state court. *Maine v. Thiboutot,* 448 *U.S.* 1, 11, 100 *S.Ct.* 2502, 2508, 65 *L.Ed.*2d 555 (1980); *see County Executive of Prince George's County v. Doe,* 300 *Md.* 445, 479 *A.2d* 352, 357 (1984); *Tallon v. Liberty Hose Co. No. 1,* 336 *Pa.Super.* 530, 485 *A.2d* 1209, 1211 n. 2 (1984).

At the same time, it is generally agreed that when federal claims are brought in a state court, state procedures ordinarily control. *Brown v. Western Ry. of Alabama,* 338 *U.S.* 294, 296, 70 *S.Ct.* 105, 106, 94 *L.Ed.* 100 (1949). State courts, however, have not found attorney's fees solely a procedural issue and so have applied federal law. For example, the Oregon Supreme Court stated in *Kay v. David Douglas School District No. 40,* 70 *Or.App.* 384, 719 *P.2d* 875, 882 (1986), that "[h]ere, however, we are not prepared to say that the right to attorney fees under section 1988 is strictly a matter of procedure." The Kansas Supreme Court found that "To avoid future confusion, however, we hereby adopt the rule that motions for attorney fees under 42 U.S.C. § 1988 must be filed no later than thirty days after the entry of judgment, thus facilitating the determination of all issues in one appeal." *Gumbhir v. Kansas State Board of Pharmacy, supra,* 646 *P.2d* at 1086. Finally, in *Tallon v. Liberty Hose Co. No. 1, supra,* 485 *A.2d* 1209, the Court followed *White* and found that a few months delay in filing for attorney's fees did not untimely surprise or prejudice the defendant. Thus, these cases suggest that state courts have followed *White* and federal law in deciding the timeliness of attorney's fees. No cases, however,

In the absence of a local rule, *White* accords the courts broad discretion in deciding the attorney's fees issue. We believe that sound discretion demands denial of this fee application. The motion for attorney's fees is untimely when analyzed in the context of the duration of the litigation and its final determination and so becomes presumptively prejudicial to defendants. Further, we are satisfied that the record sufficiently supports the conclusion of unfair surprise and prejudice sufficient to bar the application.

It is conceded that plaintiffs cannot demonstrate an evidential basis for counsel fees in the absence of a remand and further proceedings. The Appellate Division in this case ruled that the case should be remanded for some type of hearing to determine the "common core of facts or related legal theories." 222 *N.J.Super.* at 152. The Appellate Division ordered "a review of the record already created to ascertain if that record sufficiently establishes a violation of Title VIII that would permit an award of counsel fees under § 3612(c) and, therefore, under *R.* 4:42–9." *Ibid.* However, such a hearing may be fairly complicated, and it could not reasonably be confined to the existing record. Plaintiffs would have to demonstrate a Title VIII cause of action entailing discrimination, which might involve "factors such as those mentioned in *Arlington Heights II [Metropolitan Housing Dev. Corp. v. Village of Arlington Heights,* 558 *F.*2d 1283 (7th Cir.1977), *cert.* den., 434 *U.S.* 1025, 98 *S.Ct.* 752, 54 *L.Ed.*2d 772 (1978)] [which] are to be considered in a final determination on the merits rather than as a requirement for a *prima facie* case." *Huntington Branch NAACP v. Town of Huntington,* 844 *F.*2d 926, 935 (2d Cir), *reviewed declined in part, judgment aff'd,* —— *U.S.* ——, 109 *S.Ct.* 276, 102 *L.Ed.*2d 180 (1988), *rehearing denied,* —— *U.S.* ——, 109 *S.Ct.* 824, 102 *L.Ed.*2d 813 (1989). Moreover, in such a proceeding the defen-

---

have based their decision on the result that would have occurred if the case had been brought in the local federal district court using the local attorney's fee time-limit rule.

dant must also be afforded the opportunity to address evidence to establish justification and avoid liability under Title VIII. *Id.* at 936.

Even if the inquiry could be confined to the existing record, it appears a *de novo* trial based on the 1976 record may be impractical. Only two of the original attorneys represent the defendants while none of the plaintiffs' current attorneys participated in the original trial. The interpretation or reconstruction of a record made almost fifteen years ago as a basis for establishing a civil rights case is obviously infeasible, if not impossible. The prejudice inherent in the delay must serve to bar the application under prevailing federal law.

■ The denial of plaintiffs' application also finds support in the principles that underlie the common-law doctrine of laches. This Court recently stressed the doctrine of laches as involving "inexcusable delay in asserting a right...." *Lavin v. Hackensack Bd. of Educ.,* 90 *N.J.* 145, 151 (1982) (quoting *Atlantic City v. Civil Serv. Comm'n,* 3 *N.J.Super.* 57, 60 (App.Div. 1949)). Laches ordinarily is "applied in an individualized manner in particular cases," *Lavin v. Hackensack Bd. of Educ., supra,* 90 *N.J.* at 157 (Pashman, J., dissenting), and usually "involves more than mere delay, mere lapse of time." *West Jersey Title and Guaranty Co. v. Industrial Trust Co.,* 27 *N.J.* 144, 153 (1958). In extreme circumstances, however, "the length of the delay alone ... may result in laches." *Lavin v. Hackensack Bd. of Educ., supra,* 90 *N.J.* at 152. This is such a case.

■ In considering the doctrine of laches, the time period before laches applies should be stricter for motions for attorney's fees than for substantive redress. In *Baird v. Bellotti, supra,* 724 *F.*2d 1032 (1st Cir.1984), the Circuit Court suggested that a fee request should have a shorter time period under laches because "a fees request 'although separate, is collateral to, and closely connected with, judicial proceedings that have otherwise terminated.... The advantage of a continuum, and

the loss from interruption, differ from laches in the bringing of a cause of action.'" *Id.* at 1033–34 n. 1 (quoting *Baird v. Belotti, supra,* 555 *F.Supp.* 579, 586 (D.Mass.1982)). Thus we agree with the First Circuit and determine that a shorter time period can constitute laches as a defense in an attorney's fee claim. A claim for attorney's fees follows a terminated litigation and should be decided while the trial court still has a good memory of the plaintiff's degree of success, the counsel's advocacy, and the time expended on the case.

Here, the delay alone forcefully suggests unfair surprise. In this case, there seems to have been an unreasonable delay by plaintiffs for no excusable reason. As noted, this case was commenced in 1974. No application was made until 1986, following more than a decade of active litigation without a whisper of a claim for counsel fees. Even after our 1983 *Mt. Laurel II* decision, no application for fees was made. Furthermore, the course of litigation would not have alerted defendants to their exposure to counsel fees. Defendants could not reasonably have expected any application for attorney's fees in as much as the plaintiffs never actively pursued or pressed their underlying federal Title VIII claim after 1976 or before this Court in *Mount Laurel II* in 1980.[4] There was no reaction by plaintiffs when this Court explicitly indicated that plaintiffs had failed to pursue their federal claims. *Mt. Laurel II, supra,* 92 *N.J.* at 341.

Between the 1979 Appellate Division decision and the 1986 application for fees, the Title VIII action was not raised by the

---

[4]In fact, when the defendant Piscataway Township tried to introduce evidence on the issue of discrimination following the *Mount Laurel II* remand, the plaintiffs objected and this evidence was excluded. While in their petition for certification plaintiffs claim that the exclusion of this proffered evidence confirms the absence of any discrimination evidence in the 1976 trial record and therefore the need to adduce such evidence, it cannot be overstressed that the exclusion of Piscataway's discrimination evidence occurred in 1984, long after the *Mount Laurel II* trial.

plaintiffs. It may be that their silence on this point between 1979 and 1983 was attributable to the fact that they had been successful before the Appellate Division in reinstating this cause of action in 1979, and it was not an issue in the 1980 argument before this Court. However, once the case was remanded under *Mount Laurel II*, the Title VIII actions were neither preserved nor pursued. During trial in May 1984, and during the fair share hearing in the later *Hills* case involving the State Fair Housing Act, the plaintiffs could have argued the Title VIII action, but failed to do so. This, coupled with the earlier exclusion of evidence of discrimination, which arguably would be relevant to the Title VIII claims, rather strongly suggests an affirmative decision, if not a knowing acquiescence, in the removal of questions of racial discrimination from the case.

Finally, we observe that the denial of fees in this case based on its unique facts would not disserve the federal policy of fee shifting in important civil rights cases. We have consistently recognized the importance of fee shifting in the vindication of federal civil rights. *See, e.g., Singer v. State,* 95 *N.J.* 487 (1984); *Right to Choose v. Byrne,* 91 *N.J.* 287, 316 (1982). The denial of the fee claim in the circumstances of this case will not deserve these policies. The denial will not prevent or discourage future plaintiffs from bringing Federal Fair Housing Act claims and receiving attorney's fees when they prevail. Indeed, the present situation of having both a *Mt. Laurel* state claim and a federal Fair Housing Act claim joined together in the same court action is not likely to occur since all *Mt. Laurel* claims are treated primarily as matters cognizable before the administrative agency, COAH, under the State Fair Housing Act. However, to the extent Federal Fair Housing Act claims are projected in conjunction with any *Mt. Laurel* litigation, it would be anticipated in light of this decision that potential fee claims will emerge in a timely fashion.

## V.

Accordingly, the judgment below is reversed and the judgment of the trial court denying plaintiffs' motion for attorney's fees and other costs is reinstated.

Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN join in this opinion. Chief Justice WILENTZ did not participate.